CADDO RIVER LUMBER COMPANY v. WHITE.

Opinion delivered April 3, 1922.

1. MASTER AND SERVANT—ASSUMED RISK.—One engaged in unloading a sleek and crooked pole from a flat car assumed the risk incident to handling it, its condition necessarily being patent to any one.

2. MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE—JURY QUES-
TION.—Whether injuries to an employee's hand while unloading
a pole from a flat car were caused by the negligent handling of
the pole by fellow employees, *held* for the jury under the evidence.

3. DAMAGES—OPINION OF PHYSICIAN AS TO PERMANENCY OF INJURY.—
In an action for injuries to plaintiff's hand, the court properly
permitted a physician to testify that the hand was permanently
injured, though there was evidence tending to prove that the
condition of his hand resulted from former injuries.

4. APPEAL AND ERROR—HARMLESS ERROR—EXCLUSION OF EVIDENCE.
—In an action for injuries to an employee's hand while unload-
ing a pole from a flat car, the court's refusal to allow a fellow
servant who was standing between plaintiff and the car to testify
that plaintiff could not have got his hand in position to be
crushed between the pole and the car was not prejudicial error
where he was permitted to testify as to his and plaintiff's posi-
tions in such way that the jury could draw a correct conclusion.

Appeal from Pike Circuit Court, *James S. Steel,*
Judge; reversed.

*Tompkins, McRae & Tompkins,* for appellant.

The allegations of complaint stated a clear case of
assumed risk. 97 Ark. 486.

The court erred in refusing to allow appellant's wit-
ness Lawrence to testify that the injury could not have
happened in the manner alleged. Even if this be con-
sidered opinion evidence, under the circumstances it was
admissible. 2 Jones on Ev. § 360; Greenleaf on Ev.
(16 Ed.) § 430-G; 94 Ark. 538; 43 Ohio St. 270; 74 Conn.
554; 39 N. Y. Sup. 944; 36 N. Y. 132; 115 Iowa 80; 101
Cal. 585.

*Rountree & Coblentz* and *W. T. Kidd,* for appellee.

Before it can be said appellee assumed the risk it
must be shown that he knew and appreciated the danger.
77 Ark. 458; 97 Ark. 364. He had a right to assume that
the master had furnished safe tools or appliances. 67
Ark. 209; 90 Ark. 223; 89 Ark. 427; 90 Ark. 555; 92 Ark.
102; 95 Ark. 291.

The evidence of Lawrence was properly excluded, as
he was called upon to state conclusions, which would be

an invasion of the province of the jury. 11 R. C. L. 565; 167 Ind. 402; 24 Ark. 251; 29 Ark. 448; 66 Ark. 416; 66 Ark. 494; 70 Ark. 423; 95 Ark. 157.

HUMPHREYS, J.   Appellee instituted suit against appellant, a lumber corporation, in the Pike Circuit Court to recover damages in the sum of $8,000 on account of an alleged injury sustained to his hand while assisting other employees in unloading a long pole which was on one of its flat cars where it had served as a support for a house which appellant was moving. Two grounds of negligence were alleged in the amended complaint as a basis for recovery, the first being that appellant, its agents and servant, negligently furnished appellee with a crooked skid pole, which was slick and unsafe; and the second being that the pole was moved or shoved without notice or warning to appellee when he was assisting in moving the same, which caused it to fall upon and break two bones in his hand and otherwise injure it.   Appellant filed an answer, denying the allegations of negligence and injury, and, by way of further defense, pleading assumed risk and contributory negligence on the part of appellee. The cause was submitted to a jury upon the pleadings, evidence and instructions of the court, which resulted in a verdict and judgment in favor of appellee in the sum of $2,500, from which an appeal has been duly prosecuted to this court.

The evidence, in substance, reflected that appellant was engaged in moving a house from one point to another on a flat car; that the house being wider than the car, was supported by two skid poles about 16 feet long and 8 or 10 inches in diameter at the butt end, lying across the car; that the skid poles were pine; that after the house was unloaded appellant's foreman directed appellee and others to unload the poles; that the skid pole which appellee testified fell upon and injured his hand was crooked, partially disbarked and slick, due to a rain which fell during the afternoon; that appellee's hand had been twice injured before, once in 1914 when a cross-tie

fell upon it, breaking one bone and leaving a knot on the back part of the hand, and again in 1920, when a large rock fell upon it, causing him to cease work for a time. Appellant testified that in removing the pole he was standing against the car on the left side, and that the man on top gave the pole a sudden jerk, which turned it over and mashed his hand between the pole and the edge of the car; that two of his fingers were broken, which stiffened and rendered them useless; that the injury caused him great pain and suffering; that the injuries received to his hand theretofore did not seriously injure his hand; that the injury received to his hand by the falling pole rendered it useless for purposes of labor.

In the progress of the trial T. F. Alford, a practicing physician, over the objection of appellant, testified that the injury was permanent on account of lack of elasticity in the muscles and tension in the ligaments that supply the broken fingers. Appellant objected to the evidence of the physician concerning the permanency of the injury to the hand, because it might have been produced by the injuries received in 1914 and 1920.

The evidence adduced by appellant tended to show that appellee's hand was not crushed by the pole, but that the condition of his hand was due to the injuries received in 1914 and 1920. Some of appellee's co-employees testified that appellee assisted in removing the pole without making any complaint of injury or exclamation during the time it was being removed; that he continued to work that day and part of the next day without making complaint. Nat Lawrence testified that he assisted in moving the crooked pole, and was standing against the car; that appellee was on his right side, away from the car. At this point appellant offered to prove that, owing to the position of Nat Lawrence, appellee could not have reached the arm of witness and gotten hold of the pole so that it could fall on or mash his hand. This evidence was excluded, over the objection and exception of appellant.

The court sent the cause to the jury on the theory that appellee might recover if the evidence supported either or both allegations of negligence set forth in the complaint. In other words, the court authorized a recovery by appellee if the evidence showed that the pole was crooked and slick. This was error. The slick and crooked condition of the pole was necessarily patent to any one, and appellee therefore assumed the risk incident to handling a slick, crooked pole. This court said, in the case of *Chicago R. I. & P. R. Co.* v. *Grubbs,* 97 Ark. 486: "The plaintiff knew that the effect of creosote upon cross-ties was to make them slick and therefore liable to slip. * * * * Their condition was patent to him. * * * * * It was obvious, therefore, that these ties were liable to slip whenever any force or weight was applied to them. The risk or injury which might result by reason of the ties slipping or moving was obvious, and when plaintiff undertook the service of straightening them out he assumed the risk. * * * * A master is not bound to warn the servant as to dangers which are obvious and patent to him."

There is a dispute in the evidence as to whether appellee was injured through the negligent and careless handling of the pole by appellee's co-employees. The cause, therefore, should have been submitted to the jury, upon the sole question of whether the injury resulted to appellee on account of the negligent and careless handling of the pole by appellee's co-employees, without notice that the co-employees were about to move or shove the pole.

Appellant next insists that the court erred in permitting Dr. Alford to testify that the injury to plaintiff's hand was permanent. The appellant's insistence is that the effect of this testimony was to allow appellee to recover for the condition of the hand resulting from the fall of the cross-tie in 1914 and the rock in 1920 upon his hand, as well as the injury inflicted by the pole falling upon it in 1921. We do not think so. There was evidence

tending to show that the first two injuries received were slight and left the hand unimpaired. There was evidence, however, to the contrary. It therefore became a disputed question of fact for the jury to determine which injury stiffened and deformed appellee's hand. The court specifically instructed the jury that the burden was upon the appellee to show the nature and extent of the injury he received on June 23, 1921, and that he could not recover for conditions produced by prior injuries. It was not necessary for Dr. Alford himself to know or testify which injury stiffened and deformed appellee's hand before testifying concerning its condition at the time of the trial. It was perfectly proper to show the stiffened and deformed condition of appellee's hand at the time of the trial by a physician, and to show by other witnesses the cause that produced the condition thereof. The physician himself may not have known the immediate cause of the injury to the hand, but, on account of his expert knowledge, was peculiarly qualified to explain the nature and extent of the injury.

Appellant's last insistence for reversal is that the court erred in refusing to allow Nat Lawrence to testify that appellee did not reach, and could not have reached, under his (Lawrence's) arm and gotten his hand in position to be crushed between the pole and the edge of the car. We do not think any prejudice resulted to appellant on account of the exclusion of this evidence, as Lawrence was permitted to testify concerning the position of appellee and himself with reference to the car and the pole in such way that the jury itself could draw a correct conclusion as to whether appellee was near enough to reach the pole and receive the injury in the manner alleged. It would not perhaps have been error to admit the evidence upon the theory that it was a conclusion of fact drawn from appearances which could not otherwise be clearly produced to the jury. *Fort* v. *State,* 52 Ark. 180.

For the error indicated, the judgment is reversed and the cause remanded for a new trial.